UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SARAH J. MATHEWSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:23-CV-676-CCB |
| ) | |
| MARTIN J. O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Sarah J. Mathewson's ("Mathewson") appeal of the Social Security Administration's Decision dated October 12, 2022 (the "Decision") which found that Mathewson was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be remanded.

**ANALYSIS**

**A. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and

quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B. Procedural Background**

Mathewson filed an application for benefits on March 31, 2021, alleging disability beginning on June 30, 2018. The claim was denied initially and on reconsideration. On July 27, 2022, the parties participated in a telephone hearing before an ALJ. The ALJ issued an unfavorable decision on October 12, 2022. (R. 10-21). This appeal followed.

## C. The ALJ's Decision

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Mathewson did not engage in substantial gainful activity since September 27, 2019, the alleged onset date. At step two, the ALJ determined that Mathewson had the following severe impairments: spondylosis of the cervical, thoracic, and

lumbar spine; osteoarthritis and chondromalacia of the right knee; obstructive sleep apnea; morbid obesity; major depressive disorder, with psychotic features; generalized anxiety disorder with panic attacks; sleepwalking disorder; personality disorder with borderline and histrionic traits; and post-traumatic stress disorder. (R. 13). The ALJ further found that Mathewson had the non-severe impairments of a deviated nasal septum, environmental allergies, and verruca vulgaris (warts). (R. 13).

At step three, the ALJ found that Mathewson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13-14). At step four, the ALJ found that Mathewson had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In addition, she can frequently climb ramps and stairs, and can occasionally climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She can understand and remember simple instructions, and can concentrate, persist, and maintain pace sufficiently to carry out simple tasks on a sustained basis. She can perform work that requires just occasional contact with coworkers, and she should not perform work that requires contact with the public.

(R. 15).

Also at step four, the ALJ found that Mathewson is unable to perform any past relevant work. (R. 19). However, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mathewson can perform. (R. 20). Thus, the ALJ ruled that Mathewson was not disabled, as defined in the Social Security Act. (R. 21).

### *The ALJ's Evaluation of Dr. Pelletier's Opinion*

At the start of the hearing, the ALJ noted that although Mathewson had been seen by a physical consultative examiner, she had not had a consultative mental status examination. (R. 42).

4

The ALJ noted that, after looking at Mathewson's treatment record, that Matheson's mental impairments "do appear severe". (R. 42). Mathewson and her attorney agreed with the ALJ that a consultative mental status exam was a needed addition to the record. Thus, after the hearing, Mathewson attended a consultative mental status examination conducted by psychologist Dr. Julie Pelletier, PsyD. on September 8, 2022. (R. 783). Dr. Pelletier diagnosed PTSD, generalized anxiety disorder with panic attacks, recurrent major depressive disorder with psychotic features, and polysubstance abuse in remission. (R. 783). Dr. Pelletier also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (R. 784). Dr. Pelletier opined that Mathewson had: a moderate to marked limitation in making judgments on complex work-related decisions; a moderate limitation in carrying out complex tasks; mild to moderate limitations in making judgments on simple work-related decisions, and understanding and remembering complex instructions; mild limitation in understanding, remembering, and carrying out simple instructions; and mild to marked limitations in interacting with co-workers, supervisors, and the public and to responding appropriately to usual work situations and changes in a routine work setting. (R.786). Dr. Pelletier also opined that Mathewson's abilities "would vary considerably related to symptoms she is experiencing (visual/auditory hallucinations)(level of depression/anxiety [and] panic)" and that her ability to concentrate, persist, or maintain pace or adapt or manage oneself could also "be significantly impacted depending on how symptoms are managed [and] experienced." (R. 786).

In the Decision, the ALJ discussed Dr. Pelletier's opinion as follows:

> The claimant attended a consultative examination with Julie Pelletier, PsyD in September 2022. The claimant [reported] increased anxiety and somewhat regular panic attacks, chronic nightmares, a history of trauma and abuse, and hallucinations. On examination, she appeared tired and depressed, was mildly anxious, and became tearful at times. On examination, the claimant recalled just one of four words after a

5

> ten-minute delay, but was able to calculate single- and double-digit mathematical equations, only miscalculating 128/8. Based on the interview and clinical examination, the examiner offered the impression that the claimant met the diagnostic criteria for PTSD, generalized anxiety disorder with panic attacks, and major depressive disorder, recurrent, with psychotic features. The examiner offered the opinion that the claimant would have moderate to marked limitations in the ability to make judgements on complex work related decisions, moderate limitations in carrying out complex instructions, mild to moderate limitations in understanding and remembering complex instructions, and making judgements on simple, work-related decisions, and mild limitations in her ability to understand, remember, and carry out simple instructions; she further opined that the claimant would have mild to marked limitations in interacting with others and responding appropriately to usual work situations and to changes in a routine work setting. She qualified her opinion with the note that the degree of limitation would vary considerably, depending on the symptoms she was experiencing (the presence of hallucinations or not). (Ex. 16F) I will address Dr. Pelletier's opinion further, below.
>
> \*   \*   \*
>
> I am not entirely persuaded by the opinion of the consultative examiner, Julie Pelletier, PsyD, as detailed above (Ex. 16F). Based on the evidence of record, I do not see any clear evidence that the claimant experienced marked limitations in interacting with others or responding appropriately to situations. At most, I find that she had moderate limitations in that regard. Dr. Pelletier's opinion that she could have marked limitations depending on her level of symptoms might be accurate, but I do not see that level of symptoms actually reflected in his [sic] record over any consistent 12-month period.

(R. 18, 19).

An ALJ considers the persuasiveness of any medical opinion using several factors, including the supportability and consistency of the opinion, the existence and nature of any treating or examining relationship, any relevant specialization of the medical source, the medical source's familiarity with the other evidence in the claim, and the medical source's understanding of the disability program's policies and evidentiary requirements. 20 CFR 416.920c(a), (c)(1)-(5). The

6

most important factors are supportability and consistency. *Id*. at (b)(2). An ALJ must explain how they considered the supportability and consistency factors in the decision. *Id*. "Supportability" refers to how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." *Id*. at (c)(1). "Consistency" refers to how aligned a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at (c)(2). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

In support of remand, Mathewson argues that the ALJ failed to address supportability or consistency. More specifically, Mathewson contends that the ALJ did not explain what she found in the record to suggest that Mathewson was less limited than Dr. Pelletier opined. In her Decision, the ALJ discussed Mathewson's limitations with respect to the four "Paragraph B" categories of mental functioning specified in the regulations: understanding, remembering and applying information; interaction with others; concentration, persistence, and pace; and adapting and managing oneself. Specifically, the ALJ noted the record evidence regarding Mathewson's depressive, anxiety, personality, and posttraumatic- stress disorders, as well as some abnormal examination results. (R. 14-14, 17-18). The ALJ further noted Mathewson's intact memory, adequate fund-of-knowledge, appropriate interaction with providers and examiners, and normal attention and concentration. (R. 14, 73, 625, 645, 668, 682, 720). The ALJ then found that the record did not support Dr. Pelletier's opinion that Mathewson had marked limitations, particularly on a consistent basis for the twelve consecutive months required by the regulations. (R. 19). However, the ALJ did not explain what portions of the record supported this finding. This is

7

especially troubling where, as here, the agency's own examining physician found that Mathewson had marked limitations. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)("But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step."). Thus, due to this error, remand is required.

Mathewson further contends that the ALJ was "playing doctor" by not adopting Dr. Pelletier's opinion. Mathewson points out that the ALJ recognized that the prior consultative doctors did not properly assess Mathewson's impairments and functional limitations, and thus it was decided to obtain another consultative opinion post-hearing. (R. 42-44). Mathewson faults the ALJ for rejecting that opinion once it was received. Mathewson claims that the ALJ should have sought clarification of Dr. Pelletier's opinion or, perhaps, ordered another consultative mental status exam.

An important factor in this case is that the ALJ recognized that the record was not complete and that a mental status exam would be helpful. The ALJ had already noted, at the start of the hearing, that based on the medical record it appeared that Mathewson's mental impairments were severe. While it is true that an ALJ need not base her Decision on a medical opinion, and that the medical record itself is a sufficient foundation for a finding of not disabled, this case is a bit different because clearly the ALJ was concerned that she did not have enough information to determine whether Mathewson was disabled. Thus, the Court finds it prudent to send the case back to the ALJ for further consideration and analysis of Mathewson's mental impairments. On remand, the ALJ needs to either more fully explain her conclusions or obtain a new mental status examination either by re-contacting Dr. Pelletier or hiring a different psychological consultative

examiner.

Another problem with the ALJ's Decision is her reliance on the fact that Mathewson's mental state fluctuated from day to day and from situation to situation. The ALJ held that this meant that Mathewson did not have marked limitations for a continuous 12-month period, as she believed was required by Social Security's duration requirement. While it is clear that the relevant statutes and regulations require an impairment to be severe and last 12 months, there is not a requirement that the claimant must have marked limitations every day of the entire year. *See* 42 U.S.C. §423(d)(1)(A)(severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months); 20 C.F.R. §404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). As Mathewson points out in her reply brief, many severe impairments are characterized by fluctuating symptoms, and this is especially true of mental illnesses. (Reply at 4). The Seventh Circuit has repeatedly recognized that claimants often have good days and bad days, and that its improper to deny benefits to a claimant solely by cherry-picking the record and focusing on the good days. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2004); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011). Accordingly, as the Decision contains error in the application of the relevant statutes and regulations pertaining to the duration requirement, remand is warranted on this issue as well.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is REVERSED AND REMANDED for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED on May 17th, 2024.

/s/ Cristal C. Brisco
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT